```
                                                    ┌─────────────────────────────────┐
                                                    │ USDC SDNY                       │
                                                    │ DOCUMENT                        │
                                                    │ ELECTRONICALLY FILED            │
                                                    │ DOC #: _____          │
                                                    │ DATE FILED: 11/12/2024          │
                                                    └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                             :

JOHN BAXTER, *individually and on behalf of all*    :
*others similarly situated*,                             :
                                             :
                              Plaintiff,    :
                                             :          1:24-cv-5191-GHW
-v-                                        :
                                             :        MEMORANDUM OPINION
MONGODB, INC., DEV C. ITTYCHERIA, and    :            & ORDER
MICHAEL LAWRENCE GORDON,                     :
                                             :
                               Defendants.    :
                                             :
--------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

On July 9, 2024, John Baxter commenced this action on behalf of all investors who purchased or otherwise acquired MongoDB, Inc. securities between August 31, 2023 and May 30, 2024 (the "Class Period"). Mr. Baxter alleges that Defendants disseminated materially false and misleading statements related to those securities in violation of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934. Dkt. No. 1 ("Compl.") ¶¶ 1–3, 10.

Two groups of plaintiffs—(1) Carol Jou and Thomas C. Walker (collectively, the "Individual Investors") and (2) Heavy & General Laborers' Locals 472 & 172 Pension & Annuity Funds and Local 272 Labor-Management Pension Fund (collectively, the "Pension Funds")—have filed competing motions to serve as lead plaintiffs in this action. Dkt. Nos. 23, 34. Both the Individual Investors and the Pension Funds assert that they have the largest financial interest in the relief sought by the class. The Individual Investors claim to have experienced the greatest loss in the value of MongoDB stock. However, one of the Individual Investors, Ms. Jou, also received proceeds from selling put option contracts on MongoDB stocks during the Class Period. Because Ms. Jou's

losses should be offset by gains earned from the sale of put options during the Class Period, the

Pension Funds suffered the largest financial loss and are otherwise the most adequate lead plaintiffs.

Therefore, the Pension Funds' motion to serve as lead plaintiffs is GRANTED, and the Individual

Investors' motion is DENIED.

## II.    BACKGROUND

### A.  Facts

The Pension Funds and the Individual Investors claim that they lost money as a result of the

decline in value of MongoDB stock due to Defendants' alleged violations of the securities laws.

Dkt. No. 35 at 4; Dkt. No. 25 at 7–8.  During the Class Period, the Pension Funds purchased 4,592

shares and sold 500 shares of MongoDB stock.  Dkt. No. 49 at 3.  They assert that they spent

$1,588,472, net of any gains from sales of stock during the Class Period.  *Id.*  The Pension Funds

assert that they lost $622,515 as a result of Defendants' alleged fraudulent conduct.  Dkt. No. 35 at

4.

Mr. Walker asserts that he purchased 2,100 shares during the Class Period for $883,251.

Dkt. No. 48 at 4.  Mr. Walker asserts that he suffered losses of $374,644.55 as a result of

Defendants' alleged fraudulent conduct.  *Id.*  Ms. Jou asserts that during the Class Period, she

acquired 2,600 shares of MongoDB's stock, and sold 800.  *Id.*  Net of her gains from her sales, Mr.

Jou spent $765,500 to acquire MongoDB stock during the Class Period.  *Id.*  Ms. Jou asserts that she

lost $342,332.26 in the value of her shares of the company's stock as a result of Defendants' alleged

fraud.  *Id.*  In addition to her trading in the company's common stock, Ms. Jou also sold put options

on the company's stock during the Class Period.  Dkt. No. 25 at 5, n.2. Unlike her investments in

the company's stock during the Class Period, Ms. Jou's options trading was successful—she reaped a

profit of $102,343.00 on those transactions.  *See* Dkt. Nos. 26-1, 26-2, 25 at 5, 49 at 3–4.  Together,

the Individual Investors suffered losses of $716,976.81 as a result of their investments in MongoDB

2

stock during the Class Period.  Dkt. No. 48 at 4.  If the Individual Investors' collective losses are offset by the gains Ms. Jou earned from her options trading, the Individual Investors' losses decrease to $614,633.81.  Dkt. No. 25 at 5, n.2.

### B.  Procedural History

On September 9, 2024, several members of the putative class in this case filed motions to serve as lead plaintiffs and for approval of their respective choices of counsel.  Dkt. Nos. 16, 20, 22, 23, 29, 34.  Four of those movants—City of Miami Fire Fighters and Police Officers Retirement Trust, Faysal Siddiqui, Goh Joo Chuan, and Nikunj Patel—have since withdrawn their motions or filed notices of non-opposition.  Dkt. Nos. 44, 45, 46, 47.  The two remaining groups seeking to be appointed as lead plaintiffs are the Individual Investors and the Pension Funds.  *See* Dkt. Nos. 23, 34.  On September 23, 2024, both the Individual Investors and the Pension Funds filed briefs in opposition to the competing motions for appointment as lead plaintiff.  Dkt. Nos. 48, 49.  On September 30, 2024, both the Individual Investors and the Pension Funds filed reply briefs.  Dkt. Nos. 51, 52.

## III.    LEGAL STANDARD

The PSLRA requires the Court to appoint as "lead plaintiff" the member or members of the class that the Court determines to be the "most adequate plaintiff"—the member the Court determines to be "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The Court must "adopt a presumption that the most adequate plaintiff" "is the person or group of persons" that:

> (1)  "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);
> (2)  "in the determination of the court, has the largest financial interest in the relief sought by the class"; and
> (3)  "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only" by proof that the

presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## IV.    DISCUSSION

### A.  Appointment as Lead Plaintiff

The Pension Funds are the most adequate lead plaintiffs because they satisfy the requirements set forth in the PSLRA:  the Pension Funds filed a timely motion; they have the largest financial interest; and they have made a preliminary showing that they satisfy the requirements of Rule 23.

### 1.  Timeliness

The Pension Funds and the Individual Investors satisfy the timeliness requirement set forth in the PSLRA.  The PSLRA requires that a plaintiff who files a putative class action publish, in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period"; and "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]"  15 U.S.C. § 78u-4(a)(3)(A)(i).

The Pension Funds and the Individual Investors timely filed their motions to serve as lead plaintiffs.  Notice of this action was published on July 9, 2024 in Globe Newswire.  Dkt. No. 36-1; *see also Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at *2 (S.D.N.Y. June 12, 2020) (finding publication in Globe Newswire satisfied the first prong of the PSLRA).  The statutory period in which any member of the proposed class could have applied to be lead plaintiff elapsed on September 9, 2024.[1]  The Pension Funds and the Individual Investors filed their motions

---

[1] Sixty days from the date on which the notice was published was September 7, 2024.  Because September 7, 2024 fell on a Saturday, the operative deadline was Monday, September 9, 2024.  *See* Fed. R. Civ. P. 6(a)(1)(C).

on September 9, 2024, which was within the statutory period.

## 2. Largest Financial Interest

Because Ms. Jou's options-related gains offset the Individual Investors' losses, the Pension Funds have the largest financial interest in this case. "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has provided instruction on the appropriate method." *Elstein v. Net1 UEPS Techs., Inc.*, No. 13-cv-9100 (ER), 2014 WL 3687277, at *6 (S.D.N.Y. July 23, 2014). That said, courts in this circuit analyze four factors—the "*Lax-Olsten* factors"—to make this determination: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re CMED Sec. Litig.*, No. 11-cv-9297 (KBF), 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)); *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).[2] Courts considering these factors "place the most emphasis on the last of the four factors: the approximate losses suffered by the movant above any weight accorded to net shares purchased and net expenditures." *In re CMED Sec. Litig.*, 2012 WL 1118302, at *3 (internal quotation marks and citation omitted).

To calculate approximate losses, courts "typically employ one of two methodologies: First–In–First–Out ('FIFO') or Last–In–First–Out ('LIFO')." *Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). "Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold." *Id.* Courts in this district have stated "a very strong preference for the LIFO method in calculating loss." *Richman v. Goldman Sachs Grp., Inc.*, 274

---

[2] Courts in this district have described these factors in multiple ways, including the *Lax Olsten* factors, the *Lax/Olsten* factors, the *Lax Olsten* test, and the *Lax* test.

F.R.D. 473, 476 (S.D.N.Y. 2011).  "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due the inflation of the stock price.  FIFO may exaggerate losses." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) (ellipses omitted) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005)).  Thus, the Court will use the LIFO method to calculate losses.

The PSLRA "permits multiple putative class members to be appointed as lead plaintiffs." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) (citing 15 U.S.C. § 78u–4(a)(3)(B)(i)).  When multiple class members seek to be appointed jointly as lead plaintiffs, courts consider their losses collectively.  *See, e.g., Richman*, 274 F.R.D. at 477 (noting that "[o]ther courts have recognized that groups . . . may band together to aggregate their trading activities so that they may claim lead plaintiff status"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (concluding that a group of individual investors had the largest financial interest by considering their net shares purchased, expenditures, and losses collectively); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) ("[T]he putative plaintiffs have aggregated themselves into 'groups' . . . and their collective financial interest is thus calculated."); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 354 ("Having decided that aggregation [of a group of individual investors] is appropriate, the collective losses of [that group] clearly constitute the largest financial loss of any movant."). Accordingly, the Court assesses each group's losses collectively to determine which has the largest financial interest.[3]

---

[3] Neither party disputes that the other is an appropriate grouping of investors, so the Court will not consider whether disaggregation of either group is appropriate.  Dkt. Nos. 36-4, 26-4; *see Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) ("The majority of courts, including those in this District . . . permit[ ] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class."); *compare Beckman v. Ener1, Inc.*, No. 11 Civ. 5794 (PAC), 2012 WL 512651, at *4 (S.D.N.Y. Feb. 15, 2012) (disaggregating a group of individual investors citing "a real threat of lawyer-driven litigation").  "In evaluating whether a group of unrelated plaintiffs will function cohesively and separately from their lawyers, courts have considered (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Elstein*, 2014 WL 3687277, at *3–4 (citing *Varghese*, 589 F. Supp. 2d at 392).

Aggregating the losses of the Pension Funds and the Individual Investors respectively, the Court finds that the Pension Funds have demonstrated the largest financial interest. The Pension Funds represent that they suffered $622,215 in LIFO losses from the purchase of MongoDB securities during the Class Period. Dkt. No. 49 at 3. The Pension Funds purchased 4,092 net shares, with a net expenditure of $1,588,472. *Id.*

The collective financial interest of the Individual Investors is less than that of the Pension Funds after accounting for gains earned during the Class Period. Together, Mr. Walker and Ms. Jou experienced a loss of $716,976.81, with 3,900 net shares purchased and a net expenditure of $1,648,751. Dkt. No. 48 at 4. However, these figures do not account for the gains Ms. Jou earned through the sale of put options during the Class Period. Dkt. No. 25 at 5, n.2. If the Individual Investors' collective losses are offset by Ms. Jou's options-related gains, the Individual Investors' losses decrease to $614,633.81. *Id.* With this adjustment, the Individual Investors' losses and their net shares purchased are less than those of the Pension Funds.

Ms. Jou's options transactions should be included in the calculation of the Individual Investors' losses. In determining a potential lead plaintiff's financial interest, losses may be offset by gains earned from the sale of put options during the class period. *See, e.g.*, *Jurkowski v. Molycorp, Inc.*, No. 13-cv-5697 (PAC), 2014 WL 12792750, at *2 (S.D.N.Y. Apr. 2, 2014) (reasoning that "if [movant's] stock purchases pursuant to [a put option] count towards his financial interest, his gains from the options sale . . . must be subtracted from his purchase price"); *Chauhan v. Intercept Pharmaceuticals*, No. 21-cv-00036 (LJL), 2021 WL 235890, at *4 n.5 (S.D.N.Y. Jan. 25, 2021) (appointing a lead plaintiff whose "losses of $384,567.76 consist of $564,151.76 in common stock losses offset by $179,584 in options gains"); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-10360 (AJN), 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("[I]f [p]laintiff were to prevail, then at the damages stage of the case it is possible that at least some of the gains on bonds and

options that PSP incurred as a result of the fraud would need to be offset by the losses on Citigroup

stocks that PSP incurred as a result of the fraud.").  "Offsetting the . . . profit . . . against [the

movant's] class period losses accounts for any gain accruing to [the movant] from the alleged

inflation of share prices at the time of that sale."  *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D.

262, 266 (S.D.N.Y. 2009).  Offsetting Ms. Jou's options gains accounts for any benefit she accrued

as a result of Defendants' allegedly misleading statements that inflated the value of MongoDB stock

during the Class Period.  *See In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865 (EMC), 2018 WL 6609569, at

*3 (N.D. Cal. Dec. 17, 2018) ("[A] seller of a put option is like a buyer of common stock—i.e., both

transact with the expectation that the price of the stock will increase.").[4]  The Court therefore finds

it appropriate to offset Ms. Jou's losses with her options-related gains.

The Individual Investors argue that the gains Ms. Jou earned from these options sales should

be excluded from the loss figure because "[t]hese transactions are not part of the class definition."

Dkt. No. 25 at 5, n.2.  However, the language of the complaint and the Individual Investors' own

briefing suggest otherwise.  The purported class is defined as "all investors who purchased or

otherwise acquired MongoDB securities between August 31, 2023 and May 30, 2024, inclusive (the

'Class Period'), seeking to recover damages caused by Defendants' violations of the federal securities

laws."  Compl. ¶ 1.  This class definition is broad enough to include sellers of put options who

---

[4] The Second Circuit case cited by the Individual Investors is distinguishable because in that case, the defendants wanted "to offset gains that the plaintiff recover[ed] *after* the fraud bec[ame] known . . . if the stock recovers value for completely unrelated reasons." *Acticon AG v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (emphasis added).  Ms. Jou's gains, by contrast, occurred during the Class Period, when the alleged fraud was inflating the stocks' value.  Further, the Individual Investors' citation to *In re Crazy Eddie Securities Litig.* is inapposite because that opinion concerned offsetting class-wide damages in default judgment where "there were some purchasers fortunate enough not to have been injured."  948 F. Supp. 1154, 1172 (E.D.N.Y. 1996).  The issue at this stage is how to evaluate an *individual* plaintiff's losses for purposes of determining their individual financial interest in serving as lead plaintiff. Finally, the Individual Investors' appeal to *Gutman v. Sillerman* is misguided because that court was collecting cases disregarding "*losses* from shares sold prior to corrective disclosures."  No. 15-cv-7192 (CM), 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (emphasis added).  Losses prior to corrective disclosures could not logically be traced to the defendant's fraud; by contrast, gains earned during the class period—what is at issue here—could be a result of the inflated stock and would therefore offset the plaintiff's injury from the fraud.  *See Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 266 (S.D.N.Y. 2009).

"acquired" MongoDB securities as a result of the options contracts and who "seek damages for investment losses attributable to defendants' fraudulent misstatements or omissions." *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 13-cv-6016 (PKC), 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (rejecting the argument that options purchasers should be excluded from a class defined as "all those who purchased or otherwise acquired . . . securities during the [c]lass [p]eriod and were damaged thereby"; and concluding that "options-related losses [were] properly considered in determining the presumptive lead plaintiff under the PSLRA"). In fact, in their reply brief, the Individual Investors assert that "the class definition in this action includes those who invested in 'securities,' meaning both common stock **and** options." Dkt. No. 51 at 2 (emphasis in original). The Court therefore sees no reason why the class definition would preclude counting Ms. Jou's options losses and offsetting her options gains when determining her financial interest in the litigation.

The Individual Investors raise two additional arguments in support of the claim that they have the largest financial interest in this case: first, that Mr. Walker suffered the single largest individual loss of all the movants;[5] and second, that Mr. Walker's and Ms. Jou's losses represent a larger proportion "of their overall investment portfolios." Dkt. No. 51 at 4–5.

The fact that Mr. Walker suffered the single largest individual loss of all the movants does not change the conclusion that the Pension Funds collectively have the largest financial interest. The cases cited by the Individual Investors to support their argument are inapplicable because in none of those cases did the court's determination of the largest financial interest turn on which group contained the member who suffered the single largest individual loss; rather, the court in those cases noted for other reasons that the group with the largest financial interest also had the

---

[5] Mr. Walker's net loss was $374,644.55. Dkt. No. 48 at 4. Each of the funds comprising the Pension Funds suffered net losses of $251,815.72; $204,305.98; and $166,393.58 respectively. *Id.*

member with the single largest loss.[6]

While the Individual Investors request that the Court consider Mr. Walker's and Ms. Jou's alleged losses as a proportion of their entire investment portfolios, this is not a factor in the relevant test.[7] Courts in this Circuit have found that the *Lax-Olsten* factors adequately determine the largest financial interest. *See, e.g.*, *Khunt*, 102 F. Supp. 3d at 530; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436–37 (S.D.N.Y. 2008). Counsel for the Individual Investors fail to identify any case law from this Circuit that has departed from the *Lax-Olsten* factors by assessing losses proportional to an investor's overall portfolio. *See* Dkt. No. 48 at 6. Additionally, considering proportional losses when determining financial interest would favor investors with smaller portfolios. This outcome would be contrary to the general understanding that "Congress enacted the PSLRA . . . with the consideration that the best way to prevent lawyer-driven litigation was to encourage institutional investors to serve as lead plaintiffs." *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. 2009); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("[M]any courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs. . . . This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff." (citing *Juliar*, 2009 WL 1955237, at *2)). As such, the Court

---

[6] *See Pack v. LuxUrban Hotels Inc.*, No. 24-cv-1030 (PAE), 2024 WL 3046258, at *3 (S.D.N.Y. June 18, 2024) (holding that the plaintiff group with the largest financial interest was not formed in bad faith because the individuals in that group suffered "the first and second highest [losses] among all movants"); *White Pine Invs. v. CVR Ref., LP*, No. 20-cv-2863 (AT), 2021 WL 38155, at *3 (S.D.N.Y. Jan. 5, 2021) (noting that it was undisputed that the plaintiff group containing the investors with the largest individual losses also had the greatest collective financial interest); *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 425 (E.D.N.Y. 2018) (holding that the group with the largest collective losses had the largest financial interest and noting that "even" disaggregating the group, the opponent's losses would not give it a larger financial interest); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005) (holding that the plaintiff group with the largest financial interest was not formed in bad faith because two individuals in that group "would still have the 'largest financial interest'"); *Tan v. NIO Inc.*, No. 19-cv-1424 (NGG) (VMS), 2020 WL 1031489, at *3–5 (E.D.N.Y. Mar. 3, 2020) (appointing the movant with the largest individual loss to be lead plaintiff only after declining to aggregate the losses of a group of investors for lack of a pre-litigation relationship); *In re Blue Apron Holdings, Inc. Securities Litig.*, No. 17-cv-4846 (WFK) (PK), 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017) (finding that the largest financial interest belonged to the "group" that reported the greatest losses suffered).

[7] Mr. Walker's investment in MongoDB securities comprised approximately 22% of his overall portfolio holdings. Dkt. No. 48 at 6. Ms. Jou's investment comprised approximately 20% of her overall portfolio holdings. *Id.*

declines to depart from the *Lax-Olsten* factors.  Applying the *Lax-Olsten* factors, the Court finds that the Pension Funds have the largest financial interest.

### 3.  Rule 23 Requirements

The next step in identifying whether a plaintiff is entitled to the presumption that it is the most adequate lead plaintiff is to "ensure that the person (or persons) with the largest financial interest 'otherwise satisfies the requirements of Rule 23.'"  *Maliarov v. Eros Int'l PLC*, No. 15-cv-8956 (AJN), 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).  In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements—typicality and adequacy—are satisfied.  *See Ford v. Voxx Int'l Corp.*, No. 14-cv-4183 (JS) (AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (collecting cases); *see also Martingano v. Am. Int'l Grp., Inc.*, No. 06-cv-1625 (JG) (JMA), 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied." (internal quotation marks omitted)).

The typicality requirement is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability."  *In re Symbol Techs., Inc. Secs. Litig.*, No. 05-cv-3923 (DRH) (JO), 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006) (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *In re Symbol Techs., Inc. Secs.*, 2006 WL 1120619, at *3 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).

The Pension Funds have made a preliminary showing that they have met the typicality requirement. The Pension Funds' claims arise out of the same course of events as those of the class—the purchase of MongoDB common stock during the Class Period. Dkt. No. 49 at 9. Additionally, it is anticipated that the Pension Funds will make legal arguments common to all class members' claims under various provisions of the Securities Exchange Act of 1934. *See* Dkt. No. 35 at 2 ("As a result of defendant's alleged wrongful acts and omissions . . . the Labor Pension Funds and other class members have suffered significant losses and damages."); *id.* at 1 ("This action is brought . . . against MongoDB and certain of its executive officers for violations of the Securities Exchange Act of 1934.").

The Pension Funds have also made a preliminary showing that they would be adequate class representatives. Nothing before the Court suggests that the Pension Funds' interests are antagonistic to those of other class members. The Pension Funds' choice of counsel, Robbins, Geller, Rudman & Dowd, LLP ("Robbins Geller"), is qualified, experienced, and generally able to conduct the litigation, as discussed in further detail below. Dkt. No. 35 at 6; *see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-cv-3701 (JPO) (JCF), 2013 WL 12173841, at *1 (S.D.N.Y. Dec. 9, 2013); *In re SSA Bonds Antitrust Litig.*, No. 16 CIV. 3711 (ER), 2016 WL 7439365, at *3 (S.D.N.Y. Dec. 22, 2016); *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 211 (E.D.N.Y. 2019). Finally, as described above, the Pension Funds have suffered alleged losses greater than $600,000 and thus have a sufficient financial interest in the case's outcome to suggest that they will pursue the case with vigor. Therefore, the Pension Funds are presumptively the most adequate plaintiff.

### 4. There Is No Evidence To Rebut the Presumption of the Pension Funds' Adequacy

The Individual Investors have not rebutted the presumption that the Pension Funds are

adequate lead plaintiffs.  To rebut the presumption that a plaintiff is an adequate lead plaintiff, an opposing party must present proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The opposing movants must offer more than "mere speculation" to rebut the presumption of adequacy.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-8585 (LJL), 2021 WL 148752, at *5 (S.D.N.Y. Jan. 15, 2021) (citing *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011)).  Courts in this Circuit have required "exacting proof" to disqualify the presumptive lead plaintiff.  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.* ("*Facebook*"), 288 F.R.D. 26, 40 (S.D.N.Y. 2012); *Rasella v. Musk*, 342 F.R.D. 74, 81 (S.D.N.Y. 2022) (citing *Facebook*); *Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *6 (E.D.N.Y. Oct. 6, 2017) (citing *Facebook*).

Counsel for the Individual Investors do not dispute the adequacy of the Pension Funds.  Thus, the Individual Investors have failed to rebut the presumption.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3rd Cir. 2001) ("[T]he question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job." (internal quotation marks omitted)).

Further, the Court declines to appoint the Individual Investors as "co-lead" plaintiffs.  The Pension Funds have the largest stake in the outcome of the litigation and are thus the most adequate lead plaintiffs pursuant to the PSLRA.  Therefore, the Pension Funds are appropriately appointed as lead plaintiffs.  *See Glauser v. EVCI Ct r. Colleges Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (declining to appoint a group of individual investors as co-lead plaintiffs because such a proposal "contravenes the very purpose of the PSLRA—to place securities class actions in the hands of the investor (ideally a sophisticated institutional investor) with the largest amount at stake in the

outcome of the case").

### B. Appointment of Lead Counsel

Under the PSLRA, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 426 (E.D.N.Y. 2018). "There is a 'strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection.'" *Francisco v. Abengoa, S.A.*, Nos. 15-cv-6279 (ER), 15-cv-6971 (ER), 2016 WL 3004664, at *7 (S.D.N.Y. May 24, 2016) (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015)). The Pension Funds are represented by Robbins Geller. Robbins Geller is experienced in securities class action litigation, Dkt. No. 35 at 6, and has been appointed by judges in this District to serve as lead or co-lead counsel in many other matters. *See, e.g.*, *Fort Worth Employees' Ret. Fund*, 2013 WL 12173841, at *1; *In re SSA Bonds Antitrust Litig.*, 2016 WL 7439365, at *3; *City of Warren Police & Fire Ret. Sys.*, 412 F. Supp. 3d at 211. On this record, the Court sees no reason not to accept the Pension Funds' choice of counsel. Therefore, Robbins Geller is appointed Lead Class Counsel.

## V.      CONCLUSION

For the foregoing reasons, the Pension Funds' motion for appointment as lead plaintiffs and for approval of their selection of class counsel, Dkt. No. 34, is GRANTED, and the motion filed by the Individual Investors, Dkt. No. 23, is DENIED. The Pension Funds are appointed as Lead Plaintiffs, and Robbins, Geller, Rudman & Dowd, LLP is appointed as Lead Class Counsel. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 16, 20, 22, 23, 29, 34.

SO ORDERED.

Dated:  November 12, 2024
        New York, New York

                                          _____
                                          GREGORY H. WOODS
                                          United States District Judge